STEVEN G. KALAR
Federal Public Defender
Northern District of California
SOPHIA WHITING
Assistant Federal Public Defender
19th Floor Federal Building - Box 36106
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone:    (415) 436-7700
Facsimile:    (415) 436-7706
Email:         Sophia_Whiting@fd.org

Counsel for Defendant Aguilar

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SANTOS PORFIRIO ROSALES AGUILAR,<br><br>Defendant. | **Case No.:** 19-00454 VC<br><br>**DEFENDANT'S SENTENCING MEMORANDUM**<br><br>**Court:**            Courtroom 4, 17th  Floor<br>**Hearing Date:**    February 25, 2020<br>**Hearing Time:**    10:30 a.m. |

1

## INTRODUCTION

2       On December 5, 2019, Santos Porfirio Rosales Aguilar accepted responsibility for selling $20

3   worth of heroin to an undercover police officer and for the drugs he was carrying. Mr. Aguilar

4   profoundly regrets his decision to sells drugs, a decision he foolishly made after losing his

5   employment. Mr. Aguilar agrees with U.S. Probation that Criminal History Category II

6   overrepresents the seriousness of his criminal history and his likelihood of reoffending, *see*

7   Presentence Investigation Report (PSR) ¶ 75, and requests a downward departure under U.S.S.G.

8   section 4A1.3(b)(1) to Category I. In light of his minimal criminal history, his difficult upbringing,

9   the circumstances of his life in the United States, as well as the significant period of incarceration he

10  has already served pre-sentencing and the inevitability of his deportation to Honduras, Mr. Aguilar

11  respectfully requests that the Court vary downward under the factors of 18 U.S.C. § 3553(a) from the

12  adjusted U.S. Sentencing Guidelines range of 12 to 18 months and impose a sentence of time served,

13  an effective sentence of five months imprisonment.

14

## BACKGROUND

15      Mr. Aguilar was born on October 28, 1971, in Francisco Morazán, Honduras. PSR ¶ 35. He

16  grew up in a large family with eight siblings. *Id*. His parents, Sebastian and Monica, now 83 and 80

17  years old, still live in Honduras, as do several of his siblings. *Id*. ¶ 35, 37. The majority of his

18  siblings, though, have travelled abroad in search of work. *Id*. ¶ 35.

19      Growing up, Mr. Aguilar's family was extremely poor. *Id*. ¶ 35. Their home did not have

20  running water or electricity. *Id*. ¶ 36. He would walk 15 minutes just to get water for the home. *Id*.

21  Mr. Aguilar attended school only through the fifth grade. *Id*. ¶ 48. He was born with

22  Symbrachydactyly, a condition that leaves him with only one fully functioning hand. *See id*. ¶ 45.[1]

23  Despite, and in light of, these struggles, Mr. Aguilar started working at age 12 in the fields to help

24  support the family. *Id*. ¶ 37. He has financially supported his family since then. *See id*. ¶ 55. At 15

25  years old, he moved to Tegucigalpa to work in the construction industry. *Id*. ¶ 37. For three years in

26

27
_____

28  [1] The PSR correctly notes the condition Mr. Aguilar was born with is Symbrachydactyly. However, while the PSR notes that his left hand is slightly shorter than the other, Mr. Aguilar's fingers on his left hand are actually much shorter and this condition affects the functionality of his entire hand.

1   Tegucigalpa, he was unable to afford a place to live, so he slept at his worksites. *Id*. He would bring
2   food back to his family on the weekends. *Id*.

3      Mr. Aguilar has been with his partner, Angelica, for twenty years. *Id.* ¶ 41. They have a son
4   together, Jonathan, who lives with his mother in Honduras. *Id*. Mr. Aguilar also has a child from
5   another relationship, Sandrina, as does his partner Angelica. *Id.* He supports his children. *Id.* ¶ 42.

6      Mr. Aguilar decided to make the dangerous journey to the United States around age 29 because
7   of his family's economic desperation. Mr. Aguilar worked contract painting and concrete jobs for
8   several employers, often for extended periods. *See id.* ¶ 50-54. Employment was unreliable, though,
9   because of both his undocumented status and the nature of contract work. He was paid cash and
10  received no job protections. Yet, up until recently, Mr. Aguilar always managed to find new work,
11  because of his reputation as a hard worker and his willingness to take on difficult jobs. For two years
12  before his arrest, Mr. Aguilar worked full-time for a painting company. *See id.* ¶ 50. He consistently
13  sent at least half of his low income, $1,000 per month, to his family in Honduras. *See id.* ¶ 55.

14     Unfortunately, in 2019, his most recent employer relocated and he lost his steady income. He
15  began waiting on street corners for day laborer jobs, alongside younger and more able men. Mr.
16  Aguilar is now 48 years old, and continues to face challenges from Symbrachydactyly. Despite his
17  efforts, he could no longer make ends meet through gainful employment. In his desperation, he made
18  the regrettable decision to additionally begin selling small amounts of drugs to try to continue to
19  support himself and his family. He is deeply embarrassed of this mistake. *Id.* ¶ 40.

20     On September 3, 2019, Mr. Aguilar sold $20 worth of heroin to an undercover San Francisco
21  police officer in the Tenderloin. When officers searched him, they found two plastic baggies with
22  several small, individually packaged, pieces of heroin and methamphetamine in his sweatshirt
23  pockets. The packaging and amount was consistent with the small hand-to-hand sale for which he
24  was arrested. Since his arrest on September 24, 2019 and his arraignment on September 25, 2019, he
25  has been incarcerated at Santa Rita Jail. Mr. Aguilar does not have money to put on his books, so he
26  has had little communication with his family in jail, aside from a single telephone conversation with
27  his partner, Angelica. He feels incredibly guilty that he put himself in this position and is unable to
28  support them.

**DISCUSSION**

I.      **The Sentencing Guidelines (18 U.S.C. § 3553(a)(4))**

Mr. Aguilar stipulates to the Guidelines calculation of his Offense Level set forth in the parties'
plea agreement, which is as follows:

      Base Offense Level, U.S.S.G. § 2D1.1(c)(12)               16

      Acceptance of Responsibility, U.S.S.G. § 3E1.1           -3

      **Adjusted Offense Level**                                    **13**

A straightforward calculation of Mr. Aguilar's Criminal History Category places him in
Category II. However, he agrees with U.S. Probation that this category overrepresents the seriousness
of his criminal history and the likelihood he will commit other crimes. *See* PSR ¶ 75, 77. Section
4A1.3(b) of the Sentencing Guidelines explicitly allows for a downward departure under these
circumstances. Mr. Aguilar's only qualifying offense is a misdemeanor illegal entry from nearly 10
years ago, for which he was sentenced to 60 days. A sentence of just one day less would place him in
Category I. Furthermore, the conviction is far removed in time, barely qualifying under 4A1.1(b),
application note 2. Lastly, the misdemeanor conviction is for a minor, non-violent, and victimless
immigration crime. CHC II therefore substantially over-represents the seriousness of Mr. Aguilar's
criminal history, and we respectfully ask the Court to depart downward accordingly. Adjusted to
Criminal History Category I, the Guidelines range is 12 to 18 months.

Although the Court must remain mindful of the Sentencing Guidelines recommendation, the
advisory Guideline range is not presumptively reasonable and it cannot be given any more or less
weight than any other factor listed in section 3553(a). *United States v. Autery*, 555 F.3d 864, 872 (9th
Cir. 2009); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The court's paramount concern
must be to "'impose a sentence sufficient, but not greater than necessary' to reflect the seriousness of
the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence;
to protect the public; and to provide the defendant with needed educational or vocational training,
medical care, or other correctional treatment." *Carty*, 520 F.3d at 991.

Under the applicable 18 U.S.C. § 3553(a) factors, Mr. Aguilar respectfully requests that the
Court vary downward from the low end of the advisory range to a sentence of "time served," five

months of incarceration, for the reasons stated below.

## II. The Nature and Circumstances of the Offense and the Characteristics of Mr. Aguilar's Life Warrant A Sentence of Credit for Time Served (18 U.S.C. § 3553(a)(1))

The circumstances surrounding the offense and the characteristics of Mr. Aguilar's life counsel a downward variance from the advisory range. As demonstrated by his relative lack of criminal history, Mr. Aguilar is not a career drug trafficker. He is a frequently employed laborer who turned to selling drugs to support himself and his family after he lost his most recent job. He relates these circumstances not to minimize his conduct, but to provide context for it. The instant offense is an uncharacteristic mistake for Mr. Aguilar, who has spent his life working hard.

Mr. Aguilar has been financially supporting members of his family—his parents, his children, and his partner, Angelica—for decades. Mr. Aguilar did not receive the childhood every child deserves. He started working to help support his family at age 12 and has been doing so ever since. He spent the majority of his 48 years of life seeking out and securing gainful employment. Unfortunately, he lost his job, through no fault of his own. Vulnerable and desperate, Mr. Aguilar turned to selling small amounts of drugs to try to continue to support his family. He knows this was a mistake. He is eager to get back to Honduras to find work to support them.

## III. The Offense is Relatively Less Serious and a Sentence of Time Served is Just Punishment (18 U.S.C. § 3553(a)(2)(A))

Mr. Aguilar does not minimize his responsibility in this case, but the reality is that this is a relatively minor offense when compared with other federal crimes. Mr. Aguilar recognizes that selling even small amounts of drugs undoubtedly poses significant threats to public health and community safety, but the nature of this offense does not warrant a sentence longer than five months.

The extended period of incarceration Mr. Aguilar has already served at Santa Rita Jail is sufficient punishment considering the seriousness of his offense. At Santa Rita, Mr. Aguilar has almost no contact with his family. He has had one brief phone call with his partner over five months, which was only possible because a fellow inmate took pity on him and gave him phone credits. At nearly fifty years old, Mr. Aguilar has never experienced punishment of this magnitude. A sentence longer than five months would over-punish a relatively less serious offense.

1

2

**IV.    A Sentence of Time Served Affords Adequate Deterrence and Mr. Aguilar's Inevitable Deportation Minimizes Public Safety Concerns (18 U.S.C. §§ 3553(a)(2)(B) and (C))**

3

The inevitability of Mr. Aguilar's deportation makes the deterrent effect of five months of

4

incarceration that much stronger in this case. His detention and removal from the United States

5

following his release from federal imprisonment minimizes any potential concerns for public

6

safety—which are already slight given Mr. Aguilar's lack of criminal history.

7

Deportation is not a formal component of punishment in a federal criminal case, but "as a

8

matter of federal law, deportation is an integral part—indeed sometimes the most important part—of

9

the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."

10

*Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). "Deportation is a particularly severe penalty" and

11

removal from the country where Mr. Aguilar has lived and worked for many years is, practically, a

12

substantial punishment. *Id.* at 365 (internal quotations omitted). Aside from its separate punitive

13

value outside of the criminal sentencing context, deportation here serves to reinforce the deterrent

14

value of a sentence of time served. Unlike a similarly situated citizen defendant, Mr. Aguilar will not

15

return to the local community following completion of his sentence. He will be quite literally

16

removed from the community. Selling drugs on the street in the Tenderloin was always a terrible idea

17

on his part, but the inevitability of deportation makes that fact especially clear to Mr. Aguilar.

18

Over the course of five months at Santa Rita, Mr. Aguilar has come to viscerally understand the

19

consequences of his actions. This is the longest sentence he has ever served, since his only prior

20

incarceration was for misdemeanor illegal entry. Mr. Aguilar deeply feels the effect his incarceration

21

has had on his family, feeling "helpless" to provide for them while he is in jail. PSR ¶ 46. He will not

22

risk putting them in this position again. Once he is back in Honduras, Mr. Aguilar will be reunited

23

with his family, with whom he will remain. He looks forward to starting anew there and pursuing

24

vocational education to develop his construction career. He now understands the serious

25

consequences if he were to try to come back to the United States. In addition to prosecution for illegal

26

re-entry, he understands he would also face imprisonment for violating the terms of his federal

27

supervised release.

28

V.   **A Sentence Other Than Time Served Creates Unwarranted Disparities (18 U.S.C. § 3553(a)(6))**

The imposition of a sentence greater than five months would create unwarranted sentencing disparities in two ways. First, it would impose a sentence greater than those received by defendants in recent analogous cases in the Northern District of California. Second, it would amount to differential treatment compared to similarly situated citizen defendants given that Mr. Aguilar is ineligible for sentencing alternatives because of his immigration status.

This case arose from the federal government's recent Federal Initiative for the Tenderloin ("FITT"). Defendants in strikingly similar cases arising from FITT have received sentences of time served. The following cases are instructive:

- *United States v. Jesus Flores,* CR 19-429 SI. Mr. Flores was arrested for a $15 drug sale. Arresting officers found $932 cash and multiple drugs on him, including 56 grams (gross) cocaine base, 38.2 grams (gross) heroin, 32.5 grams (gross) methamphetamine, and 31.1 grams (gross) marijuana. He has two prior deportations. Judge Illston sentenced him to credit for time served (effectively four months).

- *United States v. Wilfredo Cabrerra*, CR 19-452 WHO. Mr. Cabrerra was convicted of selling $17 worth of heroin. He has three prior drug sale convictions, including a four-year prison sentence, as well as six prior deportations. Judge Orrick sentenced Mr. Cabrerra to credit for time served (effectively four months).

- *United States v. Pedro Anibal Anariba Muncia*, CR 19-428 CRB. Mr. Muncia was arrested for a $20 heroin sale. Arresting officers found $996, 37.3 grams (gross) heroin, 35.3 grams (gross) cocaine base, and 33.1 grams (gross) crystal methamphetamine on Mr. Muncia. He previously received a federal sentence of 180 days jail for distributing controlled substances, after which he was deported. Following the government and defendant's recommendation, Judge Breyer sentenced Mr. Muncia to time served (effectively four months).

As in those cases, Mr. Aguilar here engaged in low-level drug sales in the Tenderloin. Sentencing Mr. Aguilar to time served is actually one month more than the sentences served by the

above defendants. To avoid unwarranted sentencing disparities among similarly situated defendants, the Court should sentence Mr. Aguilar to time served.

Furthermore, since Mr. Aguilar is not a citizen, he is not eligible for preferable alternatives to a full term of incarceration, like community confinement or home detention. *See* U.S.S.G. § 5C1.1(d)(2). Compounding this disparity is the likelihood that Mr. Aguilar will face immigration detention upon completion of his criminal sentence. Unlike similarly situated U.S. citizen defendants, at the end of his custodial sentence, Mr. Aguilar will be detained by Immigration and Customs Enforcement for an unknown amount of time and then deported to Honduras. Mr. Aguilar should not be disproportionately punished because of his ineligibility for alternatives to incarceration based on his non-citizenship.

## VI.   A Sentence of Time Served Is Cost-Effective, Considering Mr. Aguilar's Inevitable Deportation.

Given Mr. Aguilar's inevitable deportation, a downward variance to time served will save taxpayers' dollars without threatening public safety, *see supra* Section IV. *See United States v. Loaiza-Sanchez*, 622 F.3d 939, 942 (8th Cir. 2010) (Bright, J., dissenting) ("[L]ong sentences for illegal aliens punish not only the defendant but the American taxpayer. 'It would be more sensible to give . . . a stiff, but shorter sentence and then to promptly deport him . . ..'" (quoting *United States v. Chavez*, 230 F.3d 1089, 1092 (8th Cir. 2000) (Bright, J., concurring))); *United States v. Maldonado*, 242 F.3d 1, 2 (1st Cir. 2001) (referencing a statement by the district court that "the real reason I'm going to depart downward here is because I don't want the taxpayers to pay for him unnecessarily"). Cost-effectiveness during the federal government's current FITT campaign is especially important, in light of the accompanying increased rates of defendants and detention.

## CONCLUSION

For the aforementioned reasons, the Court should sentence Mr. Aguilar to time served, effectively five months imprisonment.

1

2    Dated:     February 18, 2020                    Respectfully submitted,

3                                                    STEVEN G. KALAR
4                                                    Federal Public Defender
                                                     Northern District of California
5
                                                     _____/S
6                                                    SOPHIA WHITING
                                                     Assistant Federal Public Defender
7                                                    WILL KIRKLAND
                                                     Law Clerk
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S SENTENCING MEMORANDUM
*AGUILAR*, CR 19-454 VC